Cochran v. T. Fitch and T. F. Bunnell.

An attachment regularly prosecuted in one state according to the provisions of its laws, against one who is a non-resident and is a creditor of a resident of such state; is a bar against a suit in another state by the creditor to enforce his demand which was taken by the attachment.

C. a resident of New-York, was a creditor of T. F., residing in Pennsylvania and of T. F. B. residing in Connecticut, jointly. J. F. B. a creditor of C. proceeded by process of foreign attachment against C. in the courts of Connecticut. The two debtors of C. were named as his trustees and debtors in the attachment, and it was served on T. F. B. C. was not served with process and had no notice of the proceeding, but it went on to a judgment and execution against him. The execution according to the laws of Connecticut, was demanded of T. F. B. who paid it to the officer. *Held*, that the foreign attachment and subsequent proceedings were a bar to any suit by C. in this state, to recover his debt from T. F. and T. F. B.

Sept. 12; Oct. 2, 1843.

This was a judgment creditor's bill, filed September 13th, 1842, after the return of an execution, wholly unsatisfied.

The defendants set forth in a plea the following defence.

The complainant, Cochran, resided in the city of New-York, and in July, 1841, commenced a suit by attachment against the defendants, in the county court of Fairfield county, in the state of Connecticut, to recover the demand upon which this bill was filed. The attachment was levied upon property of Fitch, who resided in Philadelphia. T. F. Bunnell was a resident of Fairfield county. Judgment was rendered in favor of Cochran upon demurrer, on the last Tuesday of December, 1841. An appeal was taken, and the judgment was affirmed in the Superior Court of Connecticut, on the fourth Tuesday of September, 1842; and Cochran's damages were assessed

Cochran *v.* Fitch.

and his costs taxed in that court, the whole recovery being $2977 97.

On the 20th day of January, 1842, James F. Bunnell, claiming to be a creditor of Cochran, issued an attachment against him, pursuant to the laws of Connecticut, out of the Fairfield county court, in which the above defendants were named as the trustees and joint debtors of Cochran, and the attachment was levied upon T. F. Bunnell as such trustee. This writ was prosecuted and a judgment rendered thereon against Cochran, on the fourth Tuesday of September, 1842, for $2870 90, damages and costs. On the 20th of October, 1842, an execution was issued on the latter judgment, and the officer in charge of it demanded the amount from the above defendant, Thomas F. Bunnell, who thereupon paid the same to the officer, amounting, with his fees, to $2929 31. That this payment left $51 53 due on Cochran's judgment, recovered in Connecticut, which T. F. Bunnell thereupon paid to the attorney who prosecuted that judgment, on the 19th of November, 1842.

The complainant took issue upon this plea.

The state of facts which it set forth, was established by the evidence. The process of foreign attachment was not served on C. and it did not appear that he had any notice of it.

It was contended upon the testimony, that no authority was shown from the complainant, for the proceedings in his name against the defendants in Connecticut. The court, in the opinion delivered, held that there was sufficient proof that these proceedings were authorized by Cochran.

The statutes of the state of Connecticut relative to the collection of debts by foreign attachment, were produced by the defendants, and authenticated according to the act of Congress.

*W. Curtis Noyes,* for the complainant.

*S. Sherwood,* for the defendants.

THE ASSISTANT VICE-CHANCELLOR first disposed of the controverted fact relative to the authority for the issuing of

Cochran's attachment in Connecticut. He then proceeded as follows :

The next question arises upon the proceedings of James F. Bunnell, by the same process of attachment, against the complainant.

The laws of Connecticut relative to the collection of debts by foreign attachment, (Statutes of Conn., compiled in 1838, page 287, &c.) authorize an attachment of debts due from any person to an *absent* or absconding debtor, in favor of any creditor of the latter, and prohibit the garnishee from paying the debt to the absent debtor, after notice of the proceeding. The statute is not limited to debtors residents of the state and temporarily absent, as was contended by the counsel for the complainant. The term, *absent debtor,* applies equally to non-residents and residents ; the title of the statute is "*Foreign* Attachment;" its provisions are obviously intended for non-resident debtors ; and in the "*Act for the regulation of Civil Actions,*" (Stat. of Conn., above cited, pp. 41, 44,) which directs in part the mode of proceeding on attachments ; the statute speaks expressly of a defendant who is not a resident or inhabitant of the state. *Sill* v. *Bank of the United States,* (5 Conn. R. 102,) is an authority for the application of the act to the complainant.

The proceedings introduced by the defendants, appear to be conformable to the provisions of the statutes to which I have referred.

Assuming the proceedings to have been regular in form under the statute of Connecticut, was this a case which authorized such proceedings, so as to affect the debt in controversy here ? the complainant being a resident of New-York, not served with process or notice, and never having submitted himself to the jurisdiction of the courts of Connecticut in this particular suit or matter? I have no difficulty in saying that it was.

1. The debt to the complainant was due from a resident of Connecticut jointly with a resident of Pennsylvania, to a resident of New-York. The debtor in Connecticut was liable for the whole sum. Although as a general rule, moveables have

no *situs*, except the domicil of the owner, and a debt is payable to the creditor, and therefore is to be rendered to him at such domicil ; yet this is a legal fiction which yields whenever the actual *situs* is to be regarded for the attainment of justice.

In this case, the debt due from the Connecticut debtor to the New-York creditor, was personal property in Connecticut, subject to the operation of the laws of that state, in a variety of ways. It might be subjected to taxation, a proceeding which our legislature has heretofore enforced against debts due to non-residents. And as is the daily practice in this state, it was liable to be taken to satisfy the debts of the foreign creditor due to residents of the state where the primary debtor is domiciled. (See Story's Conflict of Laws, 462, § 549.)

2. If this were not sufficient to bring the case within the local law, the complainant's attempt to collect his debt there, leaves no room for doubt on the subject.

Previous to the issuing of the attachment against the complainant, he had recovered a judgment upon his attachment against the now defendants, in the Fairfield County Court. The judgment was upon demurrer, and the damages were not assessed ; but it appears to have been a *final judgment,* and on its affirmance on appeal in the Superior Court, the damages were there assessed, upon the judgment thus rendered.

From the time of the recovery of that judgment, the *situs* of the debt was undeniably in Connecticut, and within the operation of their law of attachment. This being the case, the absence of the complainant, and his omission to appear in the proceedings, and his entire ignorance of their commencement and progress, do not in any degree affect their regularity or their validity as a proceeding under the statute of that state.

The next ground taken by the complainant is, that the proceedings against him by the attachment and the judgment thereon, are of no force or validity in this state for any purpose, and no evidence that any cause of action existed against him.

If the point arose in a suit here upon that judgment, or any attempt to enforce it *in personam,* this ground would be impregnable. Reason and authority both sustain it, in that application.

By the statute of Connecticut already referred to, the court is authorized to grant a new trial to a defendant who has not had notice of the suit, or an opportunity to defend it, if they find that he had just ground of defence. (Stat. of Conn., ed. 1838, 46, § 13.)

But the position is not well taken in reference to the defence here. The attachment was purely a proceeding *in rem;* not purporting or claiming to be any thing more, in the absence of a service upon the party or his voluntary appearance. By force of this proceeding, the now defendants have been coerced to pay to the complainant's creditor, the debt which they owed to the complainant.

The courts of most civilized countries would sustain the proceeding to this extent, unless fraud or collusion were shown. (See Story's Conflict of Laws, § 549.)

In this country we have a stronger sanction in the provision of the constitution of the United States, that "full faith and " credit shall be given in each state, to the public acts, records and " judicial proceedings of every other state," and giving to Congress the power to declare the effect thereof. The act of Congress carrying out the constitution, gives to such judicial proceedings, the same faith and credit in every court in the United States, as they have by law or usage, in the courts of the state from whence they emanated. (1 Story's Laws of the U. S. 93.)

The Supreme Court of the United States has decided that by these provisions a judgment recovered in this state, is as conclusive in the District of Columbia, as it is here. *Mills* v. *Duryee,* (7 Cranch, 481.) And this decision was appoved by Spencer, Ch. J., in *Andrews* v. *Montgomery,* (19 Johns. 162,) with the qualification, that the defendant might show fraud in obtaining it, or that the state court had no jurisdiction of the person of the defendant. With these qualifications, I believe the decision in *Mills* v. *Duryee* is the settled law of this state and of all of the other states of the Union. (See the cases collected in 2 Cowen & Hill's Notes to Phillips' Ev. 897.)

. Here there was no fraud shown, and the court in Connecticut had undoubted jurisdiction *in rem,* against the complainant. It follows that I am bound in this state to give to the proceed-

Cochran *v.* Fitch.

ings of that court the same faith and credit, which they would have in the state of Connecticut, and there they would form a perfect bar to the complainant's suit upon his judgment which is the basis of this suit.

I was referred to several of our leading cases in this state, as establishing that the attachment proceeding in Connecticut was of no validity here. In some of the cases, it has been said by the learned judges who pronounced the decisions, that such a proceeding in another state (without service of process or appearance,) was a nullity in this state ; that it was void, &c. But these expressions are all to be referred to the cases which were then under consideration ; and it will be found that all those were suits brought upon the foreign judgment, as a debt, to enforce it against the person of the debtor, in which it was attempted to set up the judgment as one binding upon the person.(*a*)

The distinction between the force and effect of these judgments or proceedings by foreign attachment and against garnishees, as against the property attached or garnisheed; and as against the person of the debtor, or his property in another state or country, is very manifest. It is founded in reason and good sense, and it has been repeatedly recognised by our ablest judges in this state.

See *Pawling* v. *Bird's Executors*, (13 Johns. 192. 206, 7 ;) *Borden* v. *Fitch*, (15 Johns. 121. 142 ;) *Shumway* v. *Stillman*, (6 Wend. 447. 451.) In *Hall* v. *Williams*, (6 Pick. 232. 241,) where Parker, Ch. J., delivered an elaborate opinion on the force of judgments recovered in other states, he says, " such a judg- " ment is to conclude as to every thing over which the court " which rendered it had jurisdiction. If the property of the " citizen of another state within its lawful jurisdiction, is con- " demned by lawful process there, the decree is final and con- " clusive." And see Story on Conflict of Laws, *ubi supra.* 2 Cow. & Hill's Notes to Phill. Ev. 907, and cases cited.

There is no force in the objection that the payment by the

---

(*a*) See *Douglas* v. *Forrest*, (4 Bing. 686, 700,) where a suit was sustained in England on a Scotch judgment of *horning*, recovered against a native Scot.

defendant, T. F. Bunnell, to the officer having the execution against the complainant, was voluntary or gratuitous. The attachment was served on T. F. Bunnell as appears by the return, and when called upon with the execution, he was bound to pay, or incur a suit by scire facias in which he would be subjected to costs, unless he could show good cause why he did not pay the officer: The defendants have established their plea, and the bill must be dismissed with costs.